UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL D. SULLIVAN,<br>    Plaintiff<br><br>v.<br><br>THE PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA and<br>REASSURE AMERICA LIFE<br>INSURANCE COMPANY,<br>    Defendants | CIVIL ACTION NO. 05 CV 10030 GAO |

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## [DEFENDANTS REQUEST ORAL ARGUMENT]

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, defendants The Prudential Insurance Company of America and Reassure America Life Insurance Company ("Defendants") move for the entry of summary judgment in their favor and against the plaintiff Michael D. Sullivan ("Sullivan"). For the reasons more fully stated in their Memorandum of Law, Defendants are entitled to summary judgment because there is no genuine issue of material fact with respect to the determinative issue of whether Sullivan is now, or ever has been over the past five years, totally disabled under the terms of the individual disability insurance policy issued to him by defendant Prudential and subsequently assumed by defendant Reassure America. The defendants submit that there is no genuine issue of material fact on this issue as Sullivan's own financial records from Fidelity Investments establish that he was in fact engaging in the duties of his occupation as a trader of securities.

{K0341471.1}

In support of this motion, Defendants rely on the documents included in the Appendix ("App.") filed herewith, which documents have been Bates-numbered consecutively in the upper right-hand corner of each page, and include the following:

1. Plaintiff's Complaint, with attached Exhibits A - H;

2. Defendants' Answer;

3. Deposition testimony of plaintiff Michael Sullivan;

4. Documents marked as Exhibits at the deposition of Michael Sullivan;

5. Michael Sullivan's IRA account statements from Fidelity Investments for certain months in 2001 – 2005; and

6. Selected documents from Reassure America's claim file re: claim of Michael Sullivan.[1]

Defendants also rely on their Memorandum of Law which is filed herewith.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Defendants submit the following statement of material facts, with references to the pleadings, deposition testimony and documents, and as to which they contend there is no genuine issue to be tried.

## THE DISABILITY INSURANCE POLICY

1. On May 28, 1987, defendant Prudential Insurance Company issued to Sullivan a "Disability Insurance Contract" numbered H5 518 149 ("the Policy"). Complaint & Answer – par. 4 at App. 002, 082. A true and complete copy of the Policy is attached as Exhibit 1 to the deposition testimony of Michael Sullivan. Sullivan Dep. – Ex. 1 at App. 110-26.

2. The Policy provides a monthly income benefit of $2,810.00 in the event that the insured becomes totally disabled due to sickness or injury. Sullivan Dep. – Ex. 1 at App. 112, 116. The term "total disability" is defined in the Policy as follows:

**Total Disability –**

---

[1] Several of the pages in the Appendix have been redacted in order to maintain the confidentiality of Mr. Sullivan's date of birth and Mr. and Mrs. Sullivan's Social Security numbers.

{K0341471.1}                                   2

1. For any time that monthly income benefits are payable up to 60 months; total disability means the complete inability of the Insured to do all of the substantial duties of his or her regular occupation.

2. After benefits have been payable for more than 60 months; total disability means the complete inability of the Insured to do all the substantial duties of any gainful occupation for which he or she is reasonably fitted by education, training or experience.

Sullivan Dep. – Ex. 1 at App. 114.

3. In addition to satisfying the definition of total disability, the Policy also conditioned the payment of benefits on the Insured being under the regular care of a doctor. Sullivan Dep. – Ex. 1 at App. 116 – "Conditions for Benefit Payments."

## SULLIVAN'S OCCUPATION

4. Sullivan graduated from Bentley College in 1971 and received a bachelor of science degree in accounting. In 1980 he received a masters in business administration from the University of Massachusetts at Dartmouth. Sullivan Dep. at App. 091, p. 6.

5. After graduating from Bentley, Sullivan began working for Massachusetts Blue Cross in its Medicare audit department where he performed financial audits on Massachusetts hospitals for the Medicare program. Sullivan Dep. at App. 091, p. 7. He then moved on to the Brockton Hospital where he was the manager of general accounting for five years. Sullivan Dep. at App. 091, p. 8.

6. Thereafter, from approximately 1976 until 1998, Sullivan held numerous positions in health care management at hospitals and other organizations and performed services in financial accounting and regulatory reporting. Sullivan Dep. at App. 091-94. He worked for two years (1976-78) at the international accounting firm of Peat Marwick & Mitchell in Boston where he did health care financial consulting, which included strategic planning, bond issues and regulatory reporting to the Securities and Exchange Commission. Sullivan Dep. at App. 092, p. 10. From 1980 to 1985 he worked for Hospital Corporation of America (HCA), where he held positions as director of regulatory affairs and controller for the Northeast Division and functioned as the chief financial officer for 23 hospitals that HCA

either owned or managed. Sullivan Dep. at App. 092, pp. 11-12. Thereafter, until 1999, Sullivan held various financial and administrative positions at several Massachusetts hospitals and health care providers, including Mount Auburn Hospital, Shields Health Care, Goddard Memorial Hospital, which merged with Cardinal Cushing Hospital to become Good Samaritan Medical Center in Brockton, International Health Specialists, National Medical Care and Quorium Health Care. Sullivan Dep. at App. 093-94, pp. 13-19.

7.  At the end of 1997, Sullivan took a job in the financial planning and services sector of the Knights of Columbus, which is a fraternal organization based in Hartford, Connecticut. Sullivan Dep. at App. 094-95, pp. 20-21. In this position, Sullivan provided consulting services to members of the Knights of Columbus and their families in regard to financial planning, life insurance, annuities, mortgages and other financial products and services. Sullivan Dep. at App. 095, p. 21. In this position, Sullivan received extensive training in the sale of financial products such as life insurance, annuities, 401(k) plans and mortgages. Sullivan Dep. at App. 095, pp. 22-24.

8.  Sullivan worked as a sales representative for the Knights of Columbus during 1998 and through the end of 1999. Sullivan Dep. at App. 096, p. 25. In January, 2000 Sullivan began what he describes as "my day trading career." Sullivan Dep. at App. 097, pp. 31, 33. Sullivan describes day trading as "analyzing the market, but in particular, a certain stock that you feel has an opportunity to go up in value. And that after careful and extensive research, you buy that stock and hope that it does rise in value so that you can sell it and make a profit." Sullivan Dep. at App. 097, p. 31. Stated more simply, day trading could be described as the buying and selling of stock. Sullivan Dep. at App. 097, p. 31.

9.  Sullivan had a stock trading account at a company called Stock Cross, and he had his retirement accounts (IRA, 401(k)) at Fidelity Investments. Sullivan Dep. at App. 098, pp. 34-35.

10. Over the course of two years (2000-2001), Sullivan engaged in the trading of stocks solely for himself, as a form of self-employment, and was not working for any other person or entity. Sullivan Dep. at App. 099, pp. 37-38.

## SULLIVAN'S CLAIM FOR BENEFITS

11. On March 26, 2002, Sullivan notified Reassure that he wanted to file a claim for disability benefits. Claim File at App. 478.

12. On March 29, 2002 Reassure claim representative Pamela Jacques spoke with Sullivan by telephone. Claim File at App. 476-77. When asked what his last day of work was, Sullivan responded that "he was semi-retired." When asked what he did for work, he stated that "he does the books for his household." Claim File at App. 476.

13. In June, 2002, Sullivan submitted a written claim for disability benefits to Reassure, claiming that on January 9, 2002 he slipped and fell on a wet spot on the kitchen floor at his home and injured his back. Complaint and Answer – par. 6 at App. 002, 083; Ex. B at App. 024-37; Sullivan Dep. – Ex. 4 at App. 159-72.

14. In his "Initial Statement" to Reassure, Sullivan described his "Type of Employment" as "Unemployed." Sullivan Dep. - Ex. 4 at App. 159, 161. In response to the question on the claim form, "What was your Occupation(s) at the onset of your claim?", Sullivan again stated "Unemployed." Sullivan Dep. - Ex. 4 at App. 161. He further stated that he had no monthly income and that he worked zero hours during the period immediately prior to his claim. Sullivan Dep. – Ex. 4 at App. 161. Additional questions on the claim form asking about his job and job duties were answered "N.A.", which Sullivan intended to mean "Not Applicable." Sullivan Dep. Ex. 4 at App. 161-62. Sullivan also answered "N.A." in response to the question "Do you utilize on-line stock trading? If yes, provide details including percentage of time spent doing on-line trading prior to and since your illness or injury." Sullivan Dep. - Ex. 4 at App. 162. Sullivan signed his claim form on June 5, 2002 and he certified that all of the information that he provided in the form was "true, correct and complete." Sullivan Dep. – Ex. 4 at App. 163.

{K0341471.1}                                5

15. Reassure denied Sullivan's claim for benefits in a letter to him dated September 5, 2002. Complaint and Answer – par. 7 at App. 002, 083; Ex. C at App. 040-41. Reassure had obtained medical records from Sullivan's treating physicians – Dr. Ackil and Dr. Weller. Considering their reports in light of the fact that Sullivan was not engaged in any occupation when he claimed to have become disabled, Reassure concluded that the restrictions and limitations imposed by the physicians did not prevent Sullivan from performing the normal activities of daily living, such as eating, bathing and dressing. Complaint – Ex. C at App. 041. Therefore, the claim was denied, but Reassure said it would reassess its decision if Sullivan could provide documentation of his involvement in an occupation. *Id.*

16. On December 5, 2002, Michael J. Malloy, a Massachusetts attorney, wrote to Reassure and advised that he would be representing Sullivan in connection with the denial of his disability benefits and enclosed a Power of Attorney. Attorney Malloy instructed Reassure to send all future correspondence to him and not to Sullivan. Claim File at App. 454-56.

17. On January 30, 2003, Reassure received an undated letter from Attorney Malloy in which he made a formal demand for relief under Mass. G. L. c. 93A and 176D with respect to the denial of Sullivan's claim. He went on to say that Sullivan was not unemployed or retired at the time he became disabled, but rather was employed at the time as a day trader in securities pursuant to IRS Code § 475(f). Attorney Malloy said that the reason why Sullivan stated in his original claim statement that he was unemployed was "because to do otherwise would have been in direct violation to IRS Code § 475(f)." Attorney Malloy explained that Sullivan had applied to the IRS in February, 2001 for status as a "day trader," and it was not until July 26, 2002 that his application was approved. Claim File at App. 474-75.

18. In a letter dated March 25, 2003 from Pamela Jacques, Reassure again denied Sullivan's claim. Complaint and Answer – par.10 at App. 002-03, 083, Ex. D at App. 042-44. In her letter, Ms. Jacques reviewed the information supplied by Sullivan in which he stated that he was "semi-retired" or "unemployed." Ms. Jacques also reviewed the new information

supplied by attorney Malloy in which he claimed that Sullivan was actually working as a day trader in stocks at the time of his disability. After observing that Sullivan's activities associated with the business of buying and selling stocks appeared to be minimal, Ms. Jacques concluded that Reassure was standing by its original decision to deny benefits "on the basis that Sullivan's impairment would not have prevented him from performing his activities of a day trader beyond the 26-week elimination period." Complaint – Ex. D at App. 044.

19.     Eight and one-half months later, on December 10, 2003, attorney Malloy responded to Reassure and provided additional medical reports from Dr. Ackil and Dr. Weller in support of Sullivan's contention that he was completely unable to perform any of the duties of a stock trader and therefore was entitled to receive benefits. Complaint and Answer – par. 11 at App. 003, 083, Ex. E at App. 045-46; Claim File at App. 466-67.

20.     Following receipt of attorney Malloy's letter, Reassure convened a three-person appeal panel to review the denial of Sullivan's benefits and to investigate the claim further. Attorney Malloy was advised of Reassure's internal appeal process in a letter dated December 29, 2003. Claim File at App. 464-65.

21.     Over the next eleven months, the Reassure appeal panel investigated Sullivan's claim and obtained the following information:

A.     Upon referral of Sullivan's updated medical records to Dr. Mark Doyne, an orthopedic surgeon, on January 5, 2004 Reassure received Dr. Doyne's report that "The records support that [claimant] would continue to be limited to work at no greater than a sedentary level, changing positions frequently." Claim File at App. 462-63.

B.     After requesting information from an outside accounting consultant with respect to Internal Revenue Code § 475(f), on January 13, 2004 the outside consultant provided Reassure with the requested information and summarized § 475(f) as follows: "This section of the Internal Revenue Code essentially discusses how a trader can make an accounting election so that the trading income can be treated in a more favorable manner on Form 4797 as opposed to Schedule D." Claim File at App. 459-61.

      C.     After requesting a vocational consultant to do an occupational review, Reassure received a written report from vocational consultant Mary O'Malley. The vocational report stated that on February 11, 2004, Ms. O'Malley met with Sullivan and attorney Malloy at Sullivan's home for the purpose of obtaining additional information regarding Sullivan's occupation and to observe his home office work environment. Complaint and Answer – par. 12 at App. 003, 084, Ex. F at App. 055. On April 27, 2004 Ms. O'Malley provided Reassure with an 11-page report entitled "Occupational Review." Complaint and Answer – Ex. F at App. 055-65 (Appendices A – E not included). One of her many conclusions was the following: "Overall, the physical demands of a Day Trader are sedentary with the opportunity to change positions as needed during the workday. Even when in a very active period of trading, a Day Trader, in most circumstances, could stand up in his/her work area while continuing to view the computer screen." Complaint – Ex. F at App. 064.

      D.     Received and reviewed additional reports and records sent by attorney Malloy on July 7, 2004, including a Supplemental Attending Physician's Statement from Dr. Ackil. Complaint and Answer – par. 14 at App. 003, 084 and Complaint – Ex. G at App. 066-74.

      E.     Upon receipt of Dr. Ackil's Supplemental Attending Physician's Statement from attorney Malloy, Reassure referred it to Dr. Doyne for an updated opinion. On November 17, 2004, Dr. Doyne opined that: "The above L&R's [Limitations & Restrictions] are consistent with the ability to perform at least sedentary work, changing positions frequently. This is unchanged from the conclusions in my previous review of 1/5/04." Claim File at App. 457-58.

      22.     By letter dated November 23, 2004, Reassure advised attorney Malloy that the appeal panel had reviewed Sullivan's complete claim file and had concluded that the decision to deny him benefits was correct and in accordance with the policy language. Complaint and Answer – par. 15 at App. 003, 084 and Complaint - Ex. H at App. 075-078. In a four-page letter, Reassure's Director of Disability Claims advised attorney Malloy of the information that the appeal panel considered and summarized its conclusion as follows: "Based on the policy

{K0341471.1}                                                           8

definition of Total Disability, Mr. Sullivan's self-reported occupational duties, the duties of a Day Trader as researched by the vocational consultant, Mr. Sullivan's restrictions and limitations, and the verification of Mr. Sullivan's trading activities, the appeal panel upholds the analyst's decision regarding Mr. Sullivan's claim." Complaint - Ex. H at App. 078.

23.     In its letter of November 23, 2004, Reassure advised attorney Malloy that it was prepared to proceed with an independent medical evaluation in order to further clarify Sullivan's restrictions and limitations. Complaint - Ex. H at App. 075. The present lawsuit was filed before the examination was scheduled and it never took place.

### SULLIVAN'S STOCK TRADING ACTIVITY AT STOCKCROSS[2]

24.     In the years 2000 and 2001, Sullivan engaged in the trading of stocks for his own account and all of his stock trading activity was conducted through StockCross in Boston. Sullivan Dep. at App. 099, pp. 38-39.

25.     StockCross provided Sullivan with account statements for 2000 and 2001, which set forth all of Sullivan's stock transactions (purchases and sales) during each of these years. Sullivan Dep. at App. 103-04, pp. 206-07, Ex. 10 at App. 272-82.

26.     Sullivan's account statement from StockCross for the year 2000 shows that in 2000 he engaged in 25 sales of stock and 38 purchases of stock. Sullivan Dep. at App. 105-06, pp. 214-16, Ex. 10 at App. 275-76 - "Proceeds from Broker and Barter Exchange Transactions" and "Purchases."

27.     Sullivan's account statement from Stock Cross for the year 2001 shows that in 2001 he engaged in 9 sales of stock and 14 purchases of stock. Sullivan Dep. at App. 106, pp. 216-18, Ex. 10 at App. 279 - "Proceeds from Broker and Barter Exchange Transactions" and "2001 Purchases." All of these sales and purchases of stock took place between January 4 and March 1, 2001. *Id.*

---

[2] Sullivan's account statements from StockCross and his federal tax returns have been redacted with respect to Sullivan's and Mrs. Sullivan's Social Security numbers.

28.     In addition, the 2001 StockCross statement for the account of the "Florence C. Sullivan 2000 Trust" shows that Sullivan engaged in 4 sales of stock and 4 options transactions. Sullivan Dep. at App. 107, pp. 220-22, Ex. 10 at App. 282.

28.     For the year 2002, the StockCross transaction receipts for the account of the "Florence C. Sullivan 2000 Trust" shows that Sullivan engaged in 8 options transactions at StockCross between January 23 and April 11, 2002. Sullivan Dep. at App. 108-09, pp. 244-47, Ex. 10 at App. 285-92.

29.     Sullivan filed a joint federal tax return with his wife Florence during the years 2000 through 2004. Sullivan Dep. at App. 102, p. 196, Ex. 9 at App. 205-271. In each of these returns, Sullivan stated, under the penalties of perjury, that his occupation was "Security Trader." Sullivan Dep. at App. 102, p. 197, Ex. 9 – at App. 208, 221, 240, 254, 264 "Sign Here."

30.     Schedule D of the tax returns is entitled "Capital Gains and Losses." Sullivan Dep. at App. 102, p. 198, Ex. 9 at App. 212-14. Schedule D on each of the returns for 2000, 2001 and 2002 sets forth the stock trade transactions that Sullivan engaged in during each of these years. Sullivan Dep. at App. 102, p. 198, Ex. 9 at App. 212-14, 225-28, 244-47.

31.     The Schedule D – "Capital Gains and Losses" for 2000 shows that Sullivan had a net short-term capital gain of $41,399.18 in the year 2000, Sullivan Dep. – Ex. 9 at App. 212-14, a $158,757.23 net short-term capital loss in the year 2001, Sullivan Dep. – Ex. 9 at App. 225-28, and a $16,245.20 net short term capital loss in 2002, Sullivan Dep. – Ex. 9 at App. 244-47.

## SULLIVAN'S MUTUAL FUND TRADING ACTIVITY AT FIDELITY[3]

32.     Sullivan maintained his retirement accounts at Fidelity Investments, consisting of four separate IRA accounts – Roth IRA, Traditional IRA, and two Rollover IRA's

---

[3] Sullivan's monthly account statements from Fidelity Investments for certain months in the years 2001 through 2005 are included in the Appendix. These statements have been redacted to prevent disclosure of Sullivan's personal financial information

{K0341471.1}                                     10

(identified as Rollover IRA and Rollover IRA #2). Sullivan Dep. at App. 098-99, pp. 34-35, 39.

33. During 2001, Sullivan engaged in the following mutual fund trades in his Fidelity IRA accounts:

**SEPTEMBER, 2001 (App. 293-302)**   Trade Date - 9/06   **Transaction Amt.**

**Traditional IRA**

| | |
|---|---:|
| Sold Fidelity Fund and Purchased Fidelity High Income | $133,591.20 |
| Sold Fidelity Magellan and Purchased Fidelity High Income | 109,775.04 |

**Rollover IRA**

| | |
|---|---:|
| Sold Fidelity Fund and Purchased Fidelity High Income | $105,807.61 |

**Rollover IRA [#2]**

| | |
|---|---:|
| Sold Fidelity Magellan (all shs.) and Purchased Fidelity High Income | $169,764.94 |

**DECEMBER 2001  (App. 303-306)**   Trade Date   - 12/07

**Rollover IRA [#2]**

| | |
|---|---:|
| Sold Fidelity High Income and Purchased Fidelity Fund | $49,532.00 |
| Sold Fidelity High Income and Purchased Fidelity Fifty | $49,500.00 |
| Sold Fidelity High Income and Purchased Fidelity Puritan | <u>$49,500.00</u> |

**2001 TOTAL TRADES    -    14  (7 fund exchanges)**        **$ 667,470.79**

34. During 2002, Sullivan engaged in the following mutual fund trades in his Fidelity IRA accounts:

**MARCH 2002 (App. 307-315)**       Trade Date - 3/04/02       **Transaction Amt.**

**Traditional IRA**

| | |
|---|---:|
| Sold High Income Fund and Purchased Spartan 500 Index Fund | $49,620.00 |
| Sold High Income Fund and Purchased Fidelity Fund | 49,500.00 |
| Sold High Income Fund and Purchased Fidelity Puritan | 49,500.00 |
| Sold High Income Fund and Purchased Fidelity Fifty | 49,500.00 |

{K0341471.1}              11

**Rollover IRA**

| | |
|---|---:|
| Sold High Income Fund and Purchased Spartan 500 Index Fund | $49,552.17 |
| Sold High Income Fund and Purchased Fidelity Fund | 24,750.00 |
| Sold High Income Fund and Purchased Fidelity Puritan | 24,750.00 |

| **JULY 2002 (App. 316-327)** | **Trade Dates- 7/12 and 7/23** | **Transaction Amt.** |
|---|---|---|

**Roth IRA**

| | |
|---|---:|
| Sold Fidelity Fund and Purchased Fidelity Government Income | $8,028.35 |

**Traditional IRA**

| | |
|---|---:|
| Sold Fidelity Fund (all shs.) and Purchased Fidelity Government Income | $39,958.34 |
| Sold Fidelity Puritan (all shs.) and Purchased Fidelity Government Income | $40,974.95 |
| Sold Spartan 500 Index (all shs.) and Purchased Fidelity Government Income | $39,806.80 |
| Sold Fidelity Fifty (all shs.) and Purchased Fidelity Government Income | $47,432.72 |
| Sold Fidelity High Income (all shs.) and Purchased Fidelity Government Income | $33,264.09 |

**Rollover IRA**

| | |
|---|---:|
| Sold Fidelity Fund (all shs.) and Purchased Fidelity Government Income | $19,979.18 |
| Sold Spartan 500 Index (all shs.) and Purchased Fidelity Government Income | $39,752.37 |

**Rollover IRA [#2]**

| | |
|---|---:|
| Sold Fidelity Fund (all shs.) and Purchased Fidelity Government Income | $40,375.52 |
| Sold Fidelity Fifty (all shs.) and Purchased Fidelity Government Income | $51,494.62 |
| Sold Fidelity Puritan (all shs.) and Purchased Fidelity Government Income | $46,075.62 |

| **OCTOBER 2002 (App. 328-341)** | **Trade Date - 10/21** | **Transaction Amt.** |
|---|---|---|

**Traditional**

| | |
|---|---:|
| Sold Government Income and Purchased Interm. Govt. Income | $50,000.00 |
| Sold Government Income and Purchased Puritan | 50,000.00 |

**Rollover IRA**

| | |
|---|---:|
| Sold High Income (all shs.) and Purchased Interm. Govt. Income | $ 2,162.17 |
| Sold Govt. Income (all shs.) and Purchased Interm. Govt. Income | 61,037.85 |

**Rollover IRA [#2]**

| | |
|---|---:|
| Sold High Income (all shs.) and purchased Interm. Govt. Income | $15,384.54 |
| Sold Govt. Income (all shs.) and Purchased Interm. Govt. Income | 140,962.61 |

**2002 TOTAL TRADES - 48  (24 fund exchanges)**                          **$ 1,023,861.90**

34.     During 2003, Sullivan engaged in the following mutual fund trades in his Fidelity IRA accounts:

**JANUARY 2003 (App. 342-350)    Trade Dates  - 1/15, 1/16**          **Transaction Amt.**

**Roth IRA**

Sold Govt. Income (all shs.) and Purchased Fidelity Fund                     $ 8,315.41

**Traditional**

Sold Interm. Govt. Inc. and Purchased Fidelity Fund                          $ 25,916.01
Sold Interm. Govt. Inc. and Purchased Puritan                                  25,024.32
(Two sales = all shs.)
Sold Govt. Income (all shs.) and Purchased Puritan                            107,486.85

**Rollover IRA [#2]**

Sold Interm. Govt. Income and Purchased U.S. Treasury Notes                 $150,050.98

**SEPTEMBER 2003 (App. 352-361)    Trade Dates  - 9/2, 9/3**          **Transaction Amt.**

**Rollover IRA**

Sold Interm. Govt. Income (all shs.) and Purchased Fidelity Fund            $ 64,456.89

**Rollover IRA [#2]**

Sold Interm. Govt. Income and Purchased Fidelity Fund                          9,245.43
Sold Cash Reserves and Purchased Fidelity Fund                                 3,208.79


**OCTOBER 2003 (App. 362-371)    Trade Dates- 10/22, 10/24**          **Transaction Amt.**

**Roth IRA**

Sold Fidelity Fund (all shs.) and Purchased High Income                      $ 16,634.17

**Traditional**

Sold Fidelity Fund (all shs.) and Purchased High Income                      $ 29,480.39
Sold Puritan (all shs.) and Purchased High Income                             204,444.76

{K0341471.1}                                    13

**Rollover IRA**

| | |
|---|---:|
| Sold Fidelity Fund (all shs.) and Purchased High Income | $ 64,958.46 |
| Sold Puritan (all shs.) and Purchased High Income | 25,188.60 |

**Rollover IRA [#2]**

| | |
|---|---:|
| Sold Fidelity Fund (all shs.) and Purchased High Income | $ 12,551.13 |

**2003 TOTAL TRADES     - 28  (14 fund exchanges)**     $ 737,716.76

35.  During 2004, Sullivan engaged in the following mutual fund trades in his Fidelity IRA accounts:

**JANUARY 2004 (App. 372-377)    Trade Date   - 1/20        Transaction Amt.**

**Rollover IRA [#2]**

| | |
|---|---:|
| Received interest on U. S. Treasury Notes | $ 2,800.00 |
| Purchased Fidelity Strategic Dividend & Income | $ 2,800.00 |

**APRIL 2004 (App. 378-389)    Trade Date   - 4/8        Transaction Amt.**

**Roth IRA**

| | |
|---|---:|
| Sold Fidelity High Income and Purchased Fidelity Fund | $16,000.00 |

**Traditional IRA**

| | |
|---|---:|
| Sold Fidelity High Income and Purchased Fidelity Fund | $100,000.00 |
| Sold Fidelity High Income and Purchased Spartan 500 Index | 50,000.00 |
| Sold Fidelity High Income and Purchased Fidelity Puritan | 50,000.00 |
| Sold Fidelity High Income and Purchased Spartan Tot. Market Index | 20,000.00 |
| Sold Fidelity High Income and Purchased Inflation Protected Bond | 20,000.00 |

**Rollover IRA**

| | |
|---|---:|
| Sold Fidelity High Income and Purchased Spartan 500 Index | $ 40,000.00 |
| Sold Fidelity High Income and Purchased Fidelity Fund | 30,000.00 |
| Sold Fidelity High Income and Purchased Spartan Tot. Market Index | 10,000.00 |
| Sold Fidelity High Income and Purchased Inflation Protected Bond | 10,000.00 |

**Rollover IRA [#2]**

| | |
|---|---:|
| Sold Fidelity High Income and Purchased Spartan Tot. Market Index | $ 10,000.00 |

{K0341471.1}                              14

| AUGUST 2004 (App. 390-399) | Trade Date - 8/04 | Transaction Amt. |
|---|---|---|

**Rollover IRA [#2]**

| | |
|---|---|
| Purchased Fidelity Puritan | $ 2,900.00 |

**2004 TOTAL TRADES - 24 (11 fund exchanges and 2 purchases)    $ 364,500.00**

36.     During 2005, Sullivan engaged in the following mutual fund trades in his Fidelity IRA accounts:

| JANUARY 2005 (App. 400-417) | Trade Dates - 1/19, 1/21 | Transaction Amt. |
|---|---|---|

**Roth IRA**

| | |
|---|---|
| Sold Fidelity Fund and Purchased Fidelity High Income | $ 8,000.00 |
| Sold Fidelity Fund and Purchased Fidelity International Discovery | 3,000.00 |
| Sold Fidelity Fund and Purchased Fidelity Select Energy | 3,000.00 |
| Purchased Fidelity Puritan (current year contribution) | 4,500.00 |

**Traditional IRA**

| | |
|---|---|
| Sold Spartan Total Market Index and Purchased Fidelity High Income | $ 10,000.00 |
| Sold Spartan Total Market Index and Purchased Strategic Div. & Inc. | 8,000.00 |
| Sold Spartan 500 Index and Purchased Fidelity High Income | 45,000.00 |
| Sold Fidelity Fund and Purchased Fidelity Select Energy | 30,000.00 |
| Sold Fidelity Fund and Purchased Fidelity Select Energy Service | 30,000.00 |
| Sold Fidelity Fund and Purchased Fidelity Select Natural Gas | 20,000.00 |
| Sold Fidelity Fund and Purchased Fidelity Select Const. & Housing | 20,000.00 |

**Rollover IRA**

| | |
|---|---|
| Sold Fidelity Fund and Purchased Fidelity Select Energy Service | $ 20,000.00 |
| Sold Fidelity Fund and Purchased Fidelity Puritan | 8,000.00 |
| Sold Spartan 500 Index and Purchased Strategic Div. & Inc. | 10,000.00 |
| Sold Spartan 500 Index and Purchased Fidelity High Income | 10,000.00 |
| Sold Spartan 500 Index and Purchased Select Energy | 20,000.00 |
| Sold Spartan Total Market Index and Purchased Select Const. & Housing | 9,000.00 |

**Rollover IRA [#2]**

| | |
|---|---|
| Sold Spartan Total Market and Purchased Fidelity Select Energy | $ 5,000.00 |
| Sold Spartan Total Market and Purchased Fidelity Select Energy Service | 3,000.00 |
| Received interest on U. S. Treasury Notes | 2,942.28 |
| Purchased Fidelity International Discovery | 2,900.00 |

**MARCH 2005 (App. 418-435) Trade Dates -  3/21, 3/24, 3/28, 3/31**     **Transaction Amt.**

**Roth IRA**

| | |
|---|---:|
| Sold Fidelity International Discovery and Purchased Cash Reserves | $ 3,073.17 |
| Sold Fidelity High Income and Purchased Cash Reserves | 9,592.34 |
| Sold Spartan 500 Index and Purchased Cash Reserves | 3,742.27 |
| Sold Fidelity Fund and Purchased Cash Reserves | 2,552.60 |

**Traditional IRA**

| | |
|---|---:|
| Sold Fidelity Puritan and Purchased Cash Reserves | $40,000.00 |
| Sold Fidelity Inflation Protected Bond (all shs.) and Purchased Cash Reserves | 21,014.52 |
| Sold Select Const. & Housing (all shs.) and Purchased Cash Reserves | 20,286.90 |
| Sold Strategic Div. & Inc. (all shs.) and Purchased Cash Reserves | 8,086.10 |
| Sold Fidelity High Income and Purchased Cash Reserves | 8,000.00 |
| Sold Spartan 500 Index (all shs.) and Purchased Cash Reserves | 6,997.56 |
| Sold Spartan Total Market Index (all shs.) and Purchased Cash Reserves | 2,834.88 |
| Sold Fidelity Fund (all shs.) and Purchased Cash Reserves | 1,979.32 |

**Rollover IRA**

| | |
|---|---:|
| Sold Fidelity Inflation Protected Bond (all shs.) and Purchased Cash Reserves | $10,507.27 |
| Sold Strategic Div. & Inc. (all shs.) and Purchased Cash Reserves | 10,107.62 |
| Sold Select Const. & Housing (all shs.) and Purchased Cash Reserves | 9,124.96 |
| Sold Fidelity High Income and Purchased Cash Reserves | 5,000.00 |
| Sold Fidelity Fund (all shs.) and Purchased Cash Reserves | 2,626.26 |
| Sold Spartan 500 Index (all shs.) and Purchased Cash Reserves | 1,539.31 |
| Sold Spartan Total Market Index (all shs.) and Purchased Cash Reserves | 1,417.43 |

**Rollover IRA [#2]**

| | |
|---|---:|
| Sold Fidelity High Income (all shs.) and Purchased Cash Reserves | $3,500.30 |
| Sold Strategic Div. & Inc. (all shs.) and Purchased Cash Reserves | 3,069.24 |
| Sold Spartan Total Market Index (all shs.) and Purchased Cash Reserves | 2,519.58 |
| Sold International Discovery (all shs.) and Purchased Cash Reserves | 2,970.74 |

**APRIL 2005 (App. 436-451) Trade Dates  - 4/01, 4/04, 4/13, 4/14**     **Transaction Amt.**

**Roth IRA**

| | |
|---|---:|
| Sold Spartan 500 Index (all shs.) and Purchased Cash Reserves | $ 3,742.27 |
| Sold Fidelity Fund (all shs.) and Purchased Cash Reserves | 2,552.60 |
| Sold Fidelity Puritan (all shs.) and Purchased Cash Reserves | 4,495.16 |
| Sold Select Energy (all shs.) and Purchased Cash Reserves | 3,404.23 |

{K0341471.1}                                    16

**Traditional IRA**

| | |
|---|---:|
| Sold Fidelity High Income (all shs.) and Purchased Cash Reserves | $ 54,241.53 |
| Sold Fidelity Puritan (all shs.) and Purchased Cash Reserves | 12,664.33 |
| Sold Select Natural Gas (all shs.) and Purchased Cash Reserves | 21,974.95 |
| Sold Select Energy Service (all shs.) and Purchased Cash Reserves | 32,731.01 |
| Sold Select Energy (all shs.) and Purchased Cash Reserves | 34,190.47 |

**Rollover IRA**

| | |
|---|---:|
| Sold Fidelity High Income (all shs.) and Purchased Cash Reserves | $ 10,578.08 |
| Sold Fidelity Puritan (all shs.) and Purchased Cash Reserves | 8,038.85 |
| Sold Select Energy (all shs.) and Purchased Cash Reserves | 22,791.17 |
| Sold Select Energy Service (all shs.) and Purchased Cash Reserves | 21,818.21 |

**Rollover IRA [#2]**

| | |
|---|---:|
| Sold Strategic Div. & Inc. (all shs.) and Purchased Cash Reserves | $ 3,069.24 |
| Sold Fidelity Puritan (all shs.) and Purchased Cash Reserves | 3,081.08 |
| Sold Select Energy (all shs.) and Purchased Cash Reserves | 5,673.71 |
| Sold Select Energy Service (all shs.) and Purchased Cash Reserves | 3,268.60 |

| **DECEMBER 2005 (App. 452-453) Trade Date - 12/13** | **Transaction Amt.** |
|---|---:|

**Rollover IRA [#2]**

| | |
|---|---:|
| Sold U. S. Treasury Notes (all shs.) and Purchased Cash Reserves | $158,821.96 |

| | |
|---|---:|
| **2005 TOTAL TRADES - 120  (59 fund exchanges and 2 purchases)** | **$ 849,821.96** |

37.   From March 2002 through December 2005, Sullivan's total mutual fund transactions in his IRA accounts at Fidelity were as follows:

**TOTAL TRADES - 222  (109 exchanges and 4 purchases)**

**TOTAL TRANSACTION AMOUNTS - $ 2,975,900.62**

38.   As of December, 2005, Sullivan's IRA accounts at Fidelity were 100% in Fidelity Cash Reserves.

Respectfully submitted,

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA and
REASSURE AMERICA LIFE
INSURANCE COMPANY

By their attorneys,

February 9, 2007

*(signature)*
Edward S. Rooney, Jr.
BBO No. 426840
ECKERT SEAMANS CHERIN
& MELLOTT, LLC
One International Place, 18th Floor
Boston, MA 02110
Tel.: (617) 342-6800
Fax: (617) 342-6899

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by overnight mail, postage prepaid, this 9th day of February, 2007.

*(signature)*
Edward S. Rooney, Jr.