**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2001 MAR 27 P 2: 01

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| MICHAEL D. SULLIVAN, | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| THE PRUDENTIAL INSURANCE | ) |
| COMPANY OF AMERICA and | ) |
| REASSURE AMERICA LIFE | ) |
| INSURANCE COMPANY, | ) |
|     Defendants | ) |

**C. A. NO. 05 CV 100030 GAO**

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Michael Sullivan opposes defendants Motion for Summary Judgment.

### BACKGROUND

Defendant Reassure America Live Insurance Company ("Reassure") assumed a disability insurance policy written by The Prudential Insurance Company of America and issued to plaintiff Michael Sullivan ("Sullivan"). The policy was in full force and effect at all times and all premiums were paid. On or about January 9, 2002 Mr. Sullivan sustained serious injury to his back with parasthesias to his right lower extremity. He was under the care of a physician and was rendered unable to perform the substantial duties of his regular occupation as a securities trader. On June 5, 2002, after the required 26 week elimination period under the policy Mr. Sullivan submitted a claim for disability benefits under the policy and included an attending physician's statement in support of his claim. Mr. Sullivan's claim was denied on September 5, 2002. Mr. Sullivan continued communication with Reassure and provided them additional information, including supplemental physician's statements as they requested. Reassure denied the claim again on March 25, 2003. Only after the second denial of Mr. Sullivan's claim and Mr.

Sullivan's persistence, Reassure in January 2004 had Mr. Sullivan's medical records reviewed.
On April 27, 2004, almost two years after his claim, Reassure obtained the services of a
vocational consultant, Mary Payne O'Malley. Ms. O'Malley interviewed Mr. Sullivan but
completed her report without ever having witnessed Mr. Sullivan perform the duties of his
occupation. An appeal panel at Reassure again denied Mr. Sullivan's claim on November 23,
2004 without ever having required Mr. Sullivan to attend an Independent Medical Examination.
Mr. Sullivan has filed this complaint to recover benefits as well as reimbursement of premium
waivers to which he was entitled.

Reassure defends this action on two grounds: that Sullivan failed to submit due written
proof of disability and that he engaged in all of the regular duties of his occupation between the
periods of 2002 through 2006. Sullivan asserts and the record supports that he supplied Reassure
with necessary documentation, including supplemental physician's statements, on the issue of
disability. In addition, Reassure incorrectly asserts that Sullivan engaged in trading. They
mistake Mr. Sullivan's sparse transactions managing his retirement accounts for securities
trading.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff incorporates herein by reference its Statement of Undisputed Facts in the
Opposition to Defendants' Motion for Summary Judgment and its denial of some of Defendants'
Statement of Undisputed Facts.

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to
the nonmoving party, all material facts have been established and the moving party is entitled to
judgment as a matter of law." M.P.M Builders, LLC v. Dwyer, 442 Mass. 87, 89 (2004).

2

Additionally, summary judgment, when appropriate, may be rendered against the moving party.

Id. The Court should grant summary judgment only where there are no genuine issues of material

fact and the record entitles the moving party to judgment as a matter of law. Cassesso v.

Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass. R. Civ. P. 56©). "Granting

summary judgment is error when the party opposing the motion has alleged facts relating to the

transaction[s] on which suit has been brought which raise issues entitling him to a trial."

Community Nat. Bank v. Dawes, 369 Mass. 550, 556 (1976).

## ARGUMENT

### I.  Sullivan Provided Proof of His Total Disability.

Under the policy issued by Reassure, upon proof of total disability, Sullivan was entitled to a

monthly benefit of $ 2,810.00. (App. Ex 1, Policy)  Sullivan provided Reassure with a statement

of claim along with an attending physician's report on June 12, 2002 but Reassure's claim

adjuster determined, contrary to the evidence provided to her, that "the symptoms associated with

his impairment were not severe enough to prevent him form performing his activities of daily

living for a continuous period of six months." Mr. Sullivan's Claimant's Initial Statement asked

about his "current daily activities." Mr. Sullivan reported that these activities, prior to the claim

included:

- Morning: walk 2-3 miles or in bad weather ride stationery bicycle;

- Afternoon: go to library, play golf, tennis;

- Evening: attend civic meetings such as Town of Easton selection, Knights of Columbus
  and serve on civic committee. (App. Ex. 2Initial Claimant's Statement)

Mr. Sullivan's Attending Physician's Statement listed restrictions and limitations including

3

no prolonged bending, sitting or standing. (App. Ex 2 ). Reassure, without having met Mr.

Sullivan and without having him examined by a physician, denied his claim, relying on their self-

serving opinion which was in direct contradiction with that of Mr. Sullivan's treating physician.

(App. Ex 3)

Defendant asserts that the policy provision requiring due proof of the insured's disability is a

standard requirement in nearly all individual disability policies and references Manzi v.

Provident Mut. Life. Ins. Co., 335 Mass. 71, 77, 138 N.E. 2d 581, 585 (1956) and Arabia v. John

Hancock Mut. Life Ins. Co., 301 Mass. 397, 401, 17 N.E. 2d 202, 204 (1938). Mr. Sullivan, at

the time he had the policy with Reassure, also had two other insurance policies with disability

provisions for waiver of premiums under which he claimed benefits for his injury of January 9,

2002. Both of the other companies, Knights of Columbus and Savings Bank Life Insurance

(SBLI) have paid Mr. Sullivan the benefits to which he was entitled based upon the same proof

of disability as was provided to Reassure. (App. Ex. 12)

### A. Sullivan was under the regular care of a doctor whose report supported his disability

After Mr. Sullivan's injury he continued to receive treatment. A later MRI was

performed on July 24, 2003 and compared to the findings of January 2002. The objective

findings demonstrated:

1. Stable Lumbar spondylosis and multilevel mild central canal stenosis due to congenital canal narrowing and posterior hypertrophic change; and

2. Stable moderate right lateral stenoiss, predominantly due to hypertrophic change,

4

at L5-S1 with a superimposed minimal, shallow right posterolateral protrusion, also

stable. (App. Ex. 9, Brockton Regional MRI Center report on exam dated 7/24/03)

In a report dated August 28, 2003, Dr. Ackil opines that Mr. Sullivan was totally disabled

from 1/9/2002 through continuing, based on physical examination and the objective findings of

MRI scans. ( App. Ex. 8, Ackil and Ex. 9, MRI) He notes that "sitting or walking for extended

periods of time causes worsening of his symptoms." (App. Ex. 8, Dr. Ackil's report ) Dr. Ackil

was definite in his statement. "It is my impression that he is totally disabled at this time from his

past occupation or any other occupation, even on a part time basis." (App. Ex. 8, Ackil's report

8/28/03 pg. 2 )

Despite the clear disability statement by Mr. Sullivan's treating physician, Reassure

continued to deny Mr. Sullivan's claim for benefits. (App. Ex. 11, 3rd Denial, Reassure) Mr.

Sullivan underwent a course of physical therapy, received epidural injections and was treated

with anti-inflammatory medication to no avail. He remained symptomatic.

Mr. Sullivan also consulted Dr. Simcha Weller at Beth Israel Deaconess Medical Center.

Upon examination, reflexes were trace obtainable at the knees and absent at the ankles. (App.

Ex. 10, Weller's report July 9, 2002 ) Dr. Weller opined that if Mr. Sullivan's symptoms

continued he would consider him a suitable candidate for right L4-5 and right L5-S1

laminoforaminotomies with microsurgical decompression of the right L5 and S1 nerve roots.

(App. Ex. 10, Weller's report July 9, 2002 ) Mr. Sullivan is still considering surgery as an option

for him. (App. Ex.19, Sullivan depo at 97-98 ) Even after Reassure was provided these medical

records, they continued to deny Mr. Sullivan's claim. (App. Ex. 11, 3rd Denial, Reassure)

Reassure denies that the statements of Dr. Ackil and Dr. Weller were sufficient to qualify

Sullivan for benefits. Sullivan asserts that the statement is sufficient to qualify him for benefits.
Mr. Sullivan's Statement of Claim, Attending physician's reports, supplemental reports of
treating physician and subsequent MRI reports provided to Reassure when taken together were
reasonably sufficient to indicate Mr. Sullivan's disability. (App. Ex. 2, 8, 9, and 10) Whether it
meets the standard of "due written proof" is in and of itself a genuine issue of material fact.
Manzi v. Provident Mutual Life Ins. Co., 335 Mass. 71; 138 N.E. 2d 581 (1956).

### IV.    Sullivan Satisfied the Due Proof Requirement of the Policy.

#### A.  Sullivan was a Securities Trader.

Mr. Sullivan was a trader of securities. Traders are sellers of securities or commodities
who "depend upon such circumstances a rise in value or an advantageous purchase to enable
them to sell at a price in excess of cost." United States v. Diamond, 788 F.2d 1025, 1033.
Reassure denied Mr. Sullivan's claim on the grounds that Mr. Sullivan's back condition did not
prevent him from performing the duties *they* identified as "sitting and using the telephone".
(App. Ex. 11)  They opined that he would not be required to bend, sit or stand for prolonged
periods. (App. Ex. 11) Sullivan described his duties to include sitting for long periods and doing
research at the library. (App. Ex. 19, Sullivan dep. Pg. 161)  Frequent standing and stretching to
change positions would interfere with his ability to concentrate as required by his occupation.
(App. Ex. 18, Chusid report, Pg. 9) Reassure referred Mr. Sullivan's records to Dr. Mark Doyne,
an orthopedic surgeon who concluded that Mr. Sullivan "would continue to be limited to work at
no greater than a sedentary level, changing positions frequently."  (App. Ex. 16) At no time did
Dr. Doyne ever examine Mr. Sullivan. (App. Ex 16)  His opinion was based on review of

medical records with no physical examination or interview with Mr. Sullivan. (App. Ex. 16)

Total disability is defined by the policy as the complete inability of the Insured to do all of the substantial duties of his or her regular occupation. (App. Ex. 1)

Sullivan describes the duties of a day trader to include sitting for long periods of time, attending shareholder meetings, talking with company officials and going to the library to research. (App. Ex. 15, O'Malley report, Pg 3.) It was not until February 2004, 20 months and two denials after Mr. Sullivan's initial claim, that Reassure obtained an occupational review/vocational report by Mary Payne O'Malley. (App. Ex. 15) Ms. O'Malley met Mr. Sullivan for the purpose of obtaining additional information regarding his occupation. (App. Ex. 15)

Ms. O'Malley defined the occupation as one in which the physical demands were sedentary. (App. Ex. 15) Mr. Sullivan's physician limited his ability to perform specific tasks, including but not limited to, sitting for prolonged periods. "In order to be able to effectively function as a securities trader, one needs the ability to sit, concentrate and effectively participate in the market over long periods of time,..." *(App. Ex. 18, Chusid report, Pg. 8)* Also, it is an occupation that requires intense periods of concentration. The inability to concentrate, sit or stand for any significant length of time makes it difficult if not impossible to perform the occupation. (App. Ex. 18, Chusid report, Pg. 9) Ms. O'Malley summarily concludes that Mr. Sullivan was able to stand while viewing his computer screen, thus affording him the opportunity to change positions frequently. Ms. O'Malley makes the assumption that Mr. Sullivan performs his occupation the way a "typical" trader performs his occupation. (App. Ex. 15, O'Malley report, Pg. 10-11) Individuality in technique and style is not taken into account.

7

Former SEC Chairman Arthur Levitt defined "day trading" or "day trader" before a

Senate subcommittee. "On one end of the spectrum lie investors who trade occasionally-

sometimes on line- and hold their investment for the longer term....On the far end of the

spectrum are so called "day traders," who exclusively buy and sell stock rapidly throughout the

day trying to make money on short-term market moves." (App. Ex. 18, Chusid report, Pg. 6)

> If a person participates in the market on a daily basis, even if not actively trading, yet
> considers himself to be a trader, with this as his sole source of income, he is a legitimate
> trader. The number and duration of trades, and underlying profit and loss figures, are
> irrelevant. ((App. Ex. 18, Chusid report, Pg. 7)

Whether Mr. Sullivan was considered a "day trader"/"securities trader" and whether he

would be able to continue his occupation with accommodations is a genuine issue of material

fact. (App. Ex. 17, Bristol Consulting, Investor vs. Trader, IRS topic 429)

Reassure required a statement from the insured which was a form prepared by Reassure

and "filled in" by the claimant. The form asked a number of questions in relation to the time "**at**

**onset of your claim**" (App. Ex. 2, Initial Client Statement). When Mr. Sullivan completed this

form, he said he was "unemployed." that he had worked 0 hours during the period immediately

prior to his claim. But Mr. Sullivan interpreted the "onset of your claim" as the date he signed

the application which was June 5, 2002. From January until June 5, 2002 he was totally disabled

and therefore not working. Perhaps the interpretation anticipated by the insurance company

when they designed the form was that the "onset of your claim" would mean the date of injury.

The question did not state "on the date of injury," however; said "at the onset of your claim".

Because there was a 26 week "elimination period," the onset of the claim was delayed for six

months. (App. Ex. 1, Policy) It was during the elimination period that Sullivan was not working

8

but not qualified to receive disability benefits. Therefore, a perfectly reasonable interpretation of the "onset of his claim" was after the six month period. It was for that period of six months that Sullivan refers to himself as having been "unemployed". Reassure relies on Mr. Sullivan's statement that he was "unemployed" and interprets it to mean that he was unemployed on the date of injury. They considered Sullivan's occupation to be that of a "retired person" with no specific occupational duties and denied his claim on September 5, 2002. (App. Ex. 3) Reassure concluded (in contravention of the medical records supplied to them) that Mr. Sullivan could perform the normal activities of daily living. This status of Mr. Sullivan's occupation at "the onset of his claim" is a genuine issue of material fact to be decided at trial. Reassure's denial based only upon the representation made on the application is improper.

In addition, Sullivan had applied to the IRS in February 2001 for status as a "securities trader." He considered himself to be a day trader but had not yet been approved by the IRS. (App. Ex. 19, Sullivan dep., Pg. 107) Approval of a person's application as a securities trader is retroactive. A person performs the activity of a trader, applies to the IRS for approval of trader status, and then is granted the title by the IRS. Mr. Sullivan's interpretation of IRS Code sec. 475(f) was that it would be improper for him to hold himself out to third persons as a day trader before his application for such was approved. He received approval from the IRS on July 26, 2002. (App. Ex. 5) The approval was retroactive to the date of application. (App. Ex. 22)

## B. The Internal Revenue Service Approved Sullivan as a Securities Trader

The IRS defines securities trader as follows:

You are a trader of securities if you engage in the Business of Buying and Selling securities for your own account and you must seek to profit from daily market movements in the prices of securities. (IRS code § 475 (f)).

9

Disputed here is the term "securities trader" verses "day trader" and the absence of an application for day trader or securities trader. To begin, the IRS lumps all persons who deal in securities in whatever form as "securities traders." The IRS does not distinguish a securities trader from a day trader, swing trader, short or long term trader, chart trader or the like. It simply calls this entire group of persons "securities trader." Moreover, the IRS defines the criteria an individual must prove to be considered a securities trader of whatever nature, type or description. A "securities trader" is a blanket definition which does not delineate with any specificity and/or distinction. In other words, an individual cannot apply for "day trader" status per se. All security trading positions fall within one main category called "securities trader." Wherefore, Mr. Sullivan at the time of the accident considered himself to be a "day trader" which was a type of "securities trader" approved by the IRS for profit as a business.

Reassure challenges Sullivan's "so-called application" alleging that it was really just a voluntary election on Sullivan's part on the accounting method he would use when reporting his securities trading gains and losses. (App. Ex. 19, Sullivan depo, Pg. 135) His "application" consisted of a single-page, handwritten sheet of paper which states "this letter will serve as notice of my election as described on page D-3 of the 2000 IRS 1040 instructions........(App. Ex. 22, Sullivan to IRS dated 3/26/2001)

There is no required or prepared form published by the IRS to be used as an application for a securities trader. The single page, voluntary election is the only way for a person to apply for the status as a securities trader and as such, it was Mr. Sullivan's application for IRS day trading status. (App. Ex. 19, Sullivan, Depo., Pgs 127-128, 134-139) To be engaged in business as a trader in securities a person must: 1. seek to profit from daily market movements in prices of

10

and not from dividend, interest or capital appreciation. 2. Activity must be substantial and 3. Activity must be with continuity and regularity. IRS, Capital Gains and Losses, No. 24331I (2006) Whether this was sufficient to establish Mr. Sullivan's occupation as a securities trader is a genuine issue of material fact. United States v. Wood 943 F.2d 1048 (1991).

## C. **Fidelity Investments After January 2002 was not activity as a Securities Trader**

Reassure argues that Sullivan engaged in trades with Fidelity after the date of injury and therefore engaged in the duties of his occupation of trader of securities. They assert that Mr. Sullivan's trading activity "picked up considerably" in 2005, referring to activity in retirement accounts at Fidelity. The assertion is false. Mr. Sullivan used accounts with Stock Cross exclusively for his securities trading. (App. Ex. 19, Sullivan Depo. Pg. 39) Mr. Sullivan (as well as his wife) maintained accounts with Fidelity Investments which were retirement accounts. Fidelity managed them. Mr. Sullivan testified, "They're managed by Fidelity, the mutual funds. You don't tell them what to buy and sell." (App. Ex. 20, Sullivan Depo., Pg. 238). Sullivan's wife handled her account with Fidelity. (App. Ex 19, Sullivan Depo., Pg. 263). Plaintiff seeks to categorize this as trading activity attributed to Sullivan. It is not. To repeat the definition of securities trader:

You are a trader of securities if you engage in the Business of Buying and Selling securities for your own account and you must seek to profit from daily market movements in the prices of securities. (IRS code § 475 (f)).

A trader also may hold securities for investment. An investor is very similar to a trader. Like a trader, an investor "makes purchases for capital appreciation and income." United States v. Wood 943 F.2d 1048 (1991) citing King v. Commissioner, 89 T.C. 445, 459 (1987). Unlike a

11

trader, however, an investor makes such purchases "usually without regard to short-term developments that would influence prices on the daily market." Id. No matter how extensive his activities might be, an investor is never considered to be engaged in a trade or business with respect to his investment activities. Higgins v. Commissioner, 312 U.S. 212, 216, 218 (1941).

The accounts that Reassure allege were being traded were all with Fidelity Investments. Those accounts were not traded individually by Sullivan but were managed 100% by fund managers and as such Mr. Sullivan was not acting as a trader with respect to those accounts but rather as an investor. Fidelity Investments provides professional management services by investing in many different companies and is able to provide portfolio diversification and therefore reduce risk to its customers. In effect, when one hires Fidelity one hires a portfolio manager and staff to buy a portfolio of stocks, bonds or other investments. As such, they monitor, manage and make all changes in your Fidelity portfolio on a daily basis or otherwise should market conditions warrant changes. Quarterly, any individual (whether a securities trader, a lawyer, a cashier, etc.) would check in on the retirement accounts and seek advice of the fund managers. That is what Mr. Sullivan did. Reassure sets forth dollar values for all accounts and sets each "exchange" as two separate transactions in its memorandum. In reality, all exchanges were done in just a few occasions, on a quarterly basis.

In September 2001 his funds changed only on one date. In March 2002 there was one transaction date. In July 2002 there were only two transaction dates. In October, 2002 there was one transaction date. In January 2003 there were only two transaction dates. In September 2003 there were only two transaction dates. In October 2003 there were only two transaction dates. In January 2004 there was one transaction date. In April 2004 there was one transaction date. In

12

August 2004 there was one transaction date. In January 2005 there were two transaction dates. In March 2005 there were four transaction dates. In April 2005 there were four transaction dates. In December 2005 there was only one trade date.

These were not trades for income as a means of self employment but were quarterly maintenance of Mr. Sullivan's investment of retirement account upon advice of Fidelity Fund Managers.

There were four options exercised by Mr. Sullivan and zero stock trades after the date of injury. Reassure claims Sullivan's stock trades for the year 2000 were $1,413,617.19. Prior to the injury, in the year 2000 Mr. Sullivan's actual trades for the year were $2,785,835.00. (App. Ex. 24, Sullivan's tax returns and Ex. 25, Stock Cross statements.)

Mr. Sullivan's "day trading" activities were specifically conducted using his Stock Cross account and not Mr. & Mrs. Sullivan's jointly held retirement account. (App. Ex. 19, Sullivan Depo., Pg. 39) .

Further, Reassure claims Sullivan's stock trades for the year 2001 were $285,999.00. Sullivan's actual stock trades for the year 2001 were $749,277. (App. Ex. 24, Sullivan's tax returns and Ex. 25, Stock Cross statements.)

In April 2002 subsequent to his injury and prior to his application for benefits, Mr. Sullivan attempted to work as a securities trader in an effort to overcome his injury. He engaged in a small number of option trades in April 2002. Reassure admits in its memorandum (Reassure Memorandum in Support of Its Motion for Summary Judgment, pg. 15 ) that Mr. Sullivan did not engage in any stock trades. The options transactions were an attempt to work. Mr. Sullivan was unable to, however, because the pain was severe and interfered with his ability to concentrate.

13

(App. 20, Sullivan Depo, Pg. 242 ). The activity during this time period was not substantial and not carried on with continuity and regularity. Therefore Mr. Sullivan did not meet the I.R.S. definition of trader of securities during this period.

There were no further stock trades whatsoever from April 2002 until the present. (App. Ex. 25, Stock Cross account statements) Therefore, the issue of whether Mr. Sullivan continued his occupation as securities trader subsequent to his injury of January 9, 2002 is a genuine issue of material fact. United States v. Wood 943 F.2d 1048 (1991).

### III. Reassure Violated M.G.L. c. 93A and 176D

Reassure engaged in delay tactics and denials based on assumptions made in contradiction to the evidence presented. There were two denials prior to even consulting a vocational consultant. Reassure never requested in Independent Medical Examination. Two denials were made before they submitted Mr. Sullivan's medical records for review by a physician. The decision to deny Mr. Sullivan the benefits to which he was entitled was made by ignoring the evidence presented by Mr. Sullivan. No physical examination or interview with Mr. Sullivan to inquire directly of his pain, function level, etc. was made. Reassure simply made a broad assertion that a typical person could do it, therefore, they came to the conclusion that Mr. Sullivan could do it. Reassure's immediate denial without basis after collection of premiums was in the interest of profit and was unfair and deceptive claim practice.

Sullivan complied with the requirements of the policy issued by Reassure, providing statements from his physician as to his disability. Reassure continued to unilaterally assign an "occupational description" and assert, contrary to the written opinion of Mr. Sullivan's treating

14

physician, that he was able to continue in his occupation. Reassure's repeated denial of Mr.

Sullivan's claim without good cause was a violation of G.L. c. 93A.

## CONCLUSION

As there are sufficient genuine issues of material fact, defendants' motion for summary

judgment should be denied as to all three counts of the Complaint.

Respectfully submitted,
MICHAEL D. SULLIVAN
by his attorney,

Michael J. Malloy, Esq.
105 Washington Street, Suite 9
North Easton, MA 02356
(508) 230-7373
Fax: (508) 230-3433
BBO # 563512

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of
record for each other party by HAND DELIVERY, this 27th day of March, 2007.

Michael J. Malloy, Esq.

15